**UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY**

Caption in Compliance with D.N.J. LBR 9004-2(c)

Bruce H. Nagel, Esq.
Robert H. Solomon, Esq.
Greg M. Kohn, Esq.
NAGEL RICE, LLP
103 Eisenhower Parkway
Roseland, NJ 07068
Telephone: 973-618-0400
Fax: 973-618-9194

*Special Litigation Counsel for MicroBilt Corporation*
_____

In re:

MICROBILT CORPORATION, et al.

                       Debtor.
_____

MICROBILT CORPORATION,

                       Plaintiff,

v.

CHEX SYSTEMS, INC., GUNSTER, YOAKLEY & STEWART, P.A., and DAVID M. WELLS,

                       Defendants.

Case No. 11-18143

Judge: Honorable Michael B. Kaplan

Chapter 11

**Adv. No.: 12-01177-MBK**

---

**PLAINTIFF MICROBILT CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR RECONSIDERATION OF THE COURT'S MAY 20, 2013 ORDER GRANTING GUNSTER, YOAKLEY & STEWART, P.A.'S AND DAVID M. WELLS' MOTION FOR SUMMARY JUDGMENT**

---

Plaintiff MicroBilt Corporation ("MicroBilt"), by and through the undersigned counsel, Robert H. Solomon and Greg M. Kohn of Nagel Rice, LLP, respectfully submits this memorandum of law in support of its Motion for Reconsideration of the Court's May 20, 2013 Order granting Gunster, Yoakley & Stewart, P.A., and David M. Wells (the "Gunster Defendants") motion for summary judgment (the "Gunster Order"). As such, this Court should reconsider the Gunster Order and deny the Gunster Defendants' motion for summary judgment.

## STATEMENT OF RELEVANT FACTUAL AND PROCEDURAL HISTORY

On November 4, 2010, Chex filed a complaint (the "Chex Complaint") against CL Verify, LLC ("CLV") and its codefendant, DP Bureau, LLC ("DP Bureau") in the United States District Court, Middle District of Florida. See Chex v. CL Verify, et al., 8:12-cv-1196-T-30TGW, #1. In the Chex Complaint, Chex asserted a claim against CLV for breach of a written agreement between Chex and DP Bureau. Attached as Exhibit D to the Chex Complaint were Chex invoices which contained confidential and proprietary information and trade secrets, including the names of CLV's end users to whom CLV resold Chex' consumer credit data, the amount of data sold, the pricing per transaction charged for the information by Chex, and the amount of fees owed by CLV to Chex for those resales. Not only is this information proprietary, confidential, and a trade secret, it is one of, if not the most valuable assets belonging to the company.

CLV and DP Bureau filed an answer, counterclaim, and a third-party complaint on November 29, 2010 (the "Answer"). As part of that pleading, CLV filed a Counterclaim against Chex (the "Counterclaim") and a third party complaint (the "Third Party Complaint") against the Gunster Defendants stemming from the egregious and wrongful public dissemination of MicroBilt's trade secrets. Chex then filed a motion to dismiss the counterclaim and also a

motion to dismiss the third-party complaint. See Chex v. CL Verify, et al., 8:12-cv-1196-T-30TGW, #20 and 21. At the time that Chex filed the Chex Complaint against CLV and DP Bureau, CLV was already a subsidiary of MicroBilt. Thus, the harm caused by the Gunster Defendants and Chex was caused to MicroBilt.

After publicly disseminating MicroBilt's confidential information, Chex and the Gunster Defendants attempted to remedy their patently obvious wrongful conduct by filing a motion to redact the now publicly filed documents.[1] See Chex v. CL Verify, et al., 8:12-cv-1196-T-30TGW, #12.

On March 18, 2011, MicroBilt filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code and, on March 23, 2011, CLV also filed a voluntary petition for relief under Chapter 11 and the two bankruptcy cases have been consolidated. See 11-18143-MBK, #1, 8. Pursuant to a November 10, 2011 Order from the United States District Court in Florida, Chex' complaint against DP Bureau and CLV, and other pleadings were transferred to this Court. The Florida Court dismissed DP Bureau and CLV's third-party complaint without prejudice, as the court declined to exercise supplemental jurisdiction as to the third-party complaint.

While the case was pending in the bankruptcy court, CLV dismissed its counterclaims against Chex. Chex then dismissed its claims against CLV. As a result, the bankruptcy court transferred the case back to United States District Court in Florida because only non-debtors remained as parties. Chex filed an amended complaint against DP Bureau. Chex and DP Bureau subsequently settled and dismissed the case.

In the meantime, MicroBilt filed this adversary proceeding in this Court against Chex and the Gunster Defendants. See Docket No. 1. MicroBilt's claims are core proceedings under

---

[1] Of course, by that time, the confidential information had already been publicly filed on the ECF system, open to all including MicroBilt's customers, vendors and competitors. The bell could not be un-rung.

3

section 157(b)(2)(A) and (O). MicroBilt alleges, among other things, that Chex wrongfully provided the Gunster Defendants with MicroBilt's proprietary and confidential information and trade secrets, and that the Gunster Defendants attached the confidential and proprietary information and trade secrets to a pleading which was publicly filed in violation of the Florida Uniform Trade Secrets Act. See Id.

On or about May 14, 2012, in accordance with a bench directive from this Court, the Gunster Defendants filed a motion with the New Jersey District Court for an order: (i) withdrawing the reference of the New Jersey District Court to this Court, pursuant to 28 U.S.C. § 157(d), Fed. R. Bankr. P. 5011(a) and D.N.J. LBR 5011-1, and (ii) transferring venue of this adversary proceeding to the Florida District Court, pursuant to 28 U.S.C. § 1404(a) (the "Motion to Withdraw the Reference"). On or about June 8, 2012, MicroBilt filed opposition to the Motion to Withdraw the Reference. On or about June 18, 2012, Chex filed a joinder to the Gunster Defendants' Motion to Withdraw the Reference, and on or about June 22, 2012, the Gunster Defendants filed a brief in reply to MicroBilt's opposition. See Civil Action No. 12-2902 in the New Jersey District Court, at Docket Nos. 5 and 6.

On October 16, 2012, the Honorable Joel A. Pisano of the New Jersey District Court entered an order denying the Motion to Withdraw the Reference. Judge Pisano ordered that this Court hear all discovery and pre-trial issues in this adversary proceeding. See Civil Action No. 12-2902 in the New Jersey District Court, at Docket No. 9.

On January 15, 2013, Chex filed a Motion to Compel Arbitration. MicroBilt filed its opposition on March 15, 2013. Oral argument was held on March 22, 2013. The Court entered an Order on May 20, 2013 granting the Gunster Defendants' motion for summary judgment.

4

## LEGAL ARGUMENT

### I. Standards Governing Reconsideration Motions

As the court noted in Gutierrez v. Ashcroft, reconsideration under Rules 52(b) and 59(e) is properly granted where the Court overlooked determinative facts or case law previously presented to the Court.  See Gutierrez v. Ashcroft, 289 F. Supp. 2d 555, 561 (D.N.J. 2003); accord Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985) (observing that the "purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence").  In this District, both the District Court and the Bankruptcy Court have promulgated local practice rules addressing reconsideration motions.  See Local Rule of Bankruptcy Procedure 9013-1(h).  Under these rules, a court should reconsider its decision where a moving party demonstrates "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion…; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice."  See Saddle River Valley Bank v. Garsia, 2010 WL 276190, at *1-2 (Bankr. D.N.J. Jan. 14, 2010) (citing Max's Seafood Café by Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999)) (additional citations omitted).  "In … ruling on a motion for … reconsideration, the Court must keep an open mind … [and] should not hesitate to grant the motion when compelled to prevent manifest injustice or to correct clear legal error."  See Brambles USA, Inc. v. Blocker, 735 F. Supp. 1239, 1241 (D. Del. 1990).

### II. This Court Improperly Granted The Gunster Defendants' Motion For Summary Judgment

In dismissing MicroBilt's Complaint against the Gunster Defendants, this Court overlooked determinative law and facts.  This Court's ruling that the litigation privilege applies to the Gunster Defendants' actions is plain error.  By finding that the Gunster Defendants are

5

protected by the litigation privilege, this Court has now immunized the disclosure of a party's confidential information or trade secrets as long as it done by an attorney. This new interpretation of the litigation privilege eviscerates any confidentiality order, confidentiality provision in a contract, or statutory protection given to confidential or proprietary information or trade secrets. Respectfully, this Court misapplied the law by granting summary judgment to the Gunster Defendants.

The attaching of CLV's, now MicroBilt's, proprietary customer information and pricing is a clear violation of the Florida Uniform Trade Secret Act ("FUTSA"). This conduct is not protected by the litigation privilege. Allowing this conduct to be protected would result in illogical results. In finding that the exhibits filed with the Florida Complaint, which disclosed confidential information, are protected by the litigation privilege provides a forum in which a business competitor could expose another company's trade secrets, in the public record, without consequence, simply by first filing an action with the court. This would allow parties to circumvent the FUTSA by filing a complaint before disclosing a company's trade secrets.

In rending its opinion, this Court overlooked that other courts have found that the litigation privilege does not provide a defense to the disclosure of confidential information. See Mandziara v. Canulli, 299 Ill.App.3d 593, 598, 233 Ill.Dec. 484, 701 N.E.2d 127 (Ill.App.Ct. 1st Dist.1998) (litigation privilege does not provide defense for violation of statute that is carefully drawn to maintain the confidentiality of mental health records); In re Ortiz, 430 B.R. 523, 532 (Bankr. E.D. Wis. 2010) appeal dismissed and remanded, 665 F.3d 906 (7th Cir. 2011)(application of the litigation privilege would frustrate the purpose and function of the health care records confidentiality statute); Kensington Dev. Corp. v. Israel, 142 Wis.2d 894, 419 N.W.2d 241 (1988)(the Wisconsin Supreme Court found that because the statute at issue would

6

be essentially rendered void by application of the litigation privilege, it could not be applied). Much like the cited cases, the application of the litigation privilege would frustrate the purpose and function of the Florida Uniform Trade Secret Act. As such, the litigation privilege is inapplicable. Permitting the Gunster Defendants to shield their clear violation of the FUTSA by claiming the litigation privilege will alter how confidential information and documents are treated.

In his opinion, Judge Kaplan misapplied the balancing test in finding that the balance weighed in favor of promoting zealous advocacy and applying the litigation privilege. Judge Kaplan stated that the Court needed to balance the public interest in allowing litigants and counsel to freely and zealously advocate for their causes in court versus protecting the rights of individuals, including the right of an individual to maintain his or her reputation and not be subject to slander or malicious conduct. This finding is contrary to the law.

The judicially created litigation privilege must be measured against the statutory right under Florida law to sue for the public disclosure of proprietary information under the FUTSA. Florida Courts strongly protect from disclosure, information which if obtained by a competitor, could adversely affect a party's business. See Westchester Gen. Hosp., Inc. v. Dep't of Health, Ed. & Welfare, 434 F. Supp. 435, 440 (M.D. Fla. 1977)(the information which is either explicitly stated in or deducible from the plaintiff's 1975 Cost Report would, if obtained by a competitor, facilitate personnel raiding, takeover efforts, unfair bargaining practices, selective pricing of patient services, and expansion planning. In short, disclosure of the cost report would adversely affect the plaintiff's competitive position); Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dunn, 191 F. Supp. 2d 1346, 1354 (M.D. Fla. 2002)(granting preliminary injunction preventing defendants from using or disclosing plaintiff's customer list). In weighing Florida's strong

7

interest in protecting trade secrets against the right to zealous advocacy, promoting zealous advocacy does not outweigh a company's right to maintain its trade secrets which are essential to its business. Without trade secret protection, the Court is effectively choosing to forego necessary protection for businesses at the expense of protecting attorneys who violate the law by disclosing proprietary and confidential information and trade secrets.

Here, the Gunster Defendants' actions go beyond zealous advocacy. It was completely unnecessary for MicroBilt's customer lists, pricing information, and transaction details to be filed in a breach of contract action. All that was necessary was the first page of the invoice that set forth the amount due. The accompanying documents setting forth the breakdown of the total fees was irrelevant. The only purpose behind this disclosure was to cause harm to MicroBilt as it had no bearing on the validity of Chex's claims. The litigation privilege does not protect documents that are not legally necessary for the prosecution of the lawsuit. The Gunster Defendants misappropriated proprietary information and merely doing so at the time of instituting the Florida Complaint does not protect it from liability for its actions.

Courts addressing the litigation privilege defense have noted that the communication must be "legally necessary in order to prosecute or defend" the action. See Monroe v. CitiMortgage, Inc., 2007 WL 2071284, at *3 (M.D. Fla. July 19, 2007)[2]; Stern v. O'Quinn, 253 F.R.D. 663, 669 (S.D. Fla. 2008) (noting that litigation privilege did not apply because "alleged statements were not legally necessary for the prosecution or defense of the lawsuit"). In Bruce v.

---

[2] In its opinion, the Court misstates the holding of Monroe. The court in Monroe held that payoff letters sent to collect upon foreclosure judgment months after entry of summary final judgment were not related to prosecution or defense of foreclosure suit or necessary to the litigation, and thus were not protected by the litigation privilege. See 2007 WL 2071284, at *3; see also Bruce v. Ocwen Loan Servicing, LLC, 2012 WL 4867224 (M.D. Fla. Oct. 15, 2012)(the court in its opinion cites Monroe for the proposition that actions not necessary to or in the course of the litigation are not subject to the litigation privilege).

Ocwen Loan Servicing, LLC, 2012 WL 4867224 (M.D. Fla. Oct. 15, 2012), the court found that in a foreclosure action phone calls made to the plaintiff were not required or necessary in order to pursue the foreclosure and therefore the litigation privilege did not apply. See Echervarria, McCalla, Raymer, Barrett & Frappier v. Cole, 950 So.2d 380, 384 (Fla.2007) (citation omitted)(the litigation privilege only applies to communications made during the course of, and related to, a judicial proceeding). Thus, because the names of CLV's end users to whom CLV resold Chex' consumer credit data, the amount of data sold, and the pricing per transaction charged for the information by Chex were not required or necessary in order for Chex to pursue its claims in the Florida Litigation, the litigation privilege does not apply.

Further, the Court stated in its opinion that MicroBilt had the opportunity to seek sanctions against the Gunster Defendants with the benefit of the court filed documents as proof. MicroBilt's ability to seek sanctions has no bearing on the applicability of the litigation privilege. Just because a sanction remedy may exist does not preclude MicroBilt from bringing this action.

Based upon the foregoing, it is respectfully requested that MicroBilt's motion for reconsideration be granted, the Gunster Order be vacated, and the Gunster Defendants' motion for summary judgment be denied.

## CONCLUSION

For the foregoing reasons, MicroBilt's motion for reconsideration should be granted.

    Respectfully submitted,

    s/ Greg M. Kohn

    GREG M. KOHN

Dated: May 31, 2013